*402 OPINION.
Green :
The alleged errors will be discussed in the order in which they have been previously stated.
The first two issues deal with the determination of the fair market value of the leaseholds turned in to the petitioner at and after incorporation by its sole stockholder, for purposes of invested capital and exhaustion.
The petitioner was organized on March 28, 1913, for the purpose of operating a cattle ranch which had been previously conducted by Maguire individually. All the land under consideration, part of which he owned in fee and the remainder which he held under leases, had been used in connection with this ranch. At the time of its incorporation, three leases, covering 23,674 acres, were transferred, together with the ranch equipment, cattle and other property, for the entire capital stock, amounting to $50,000. The leases were set up on the books of the petitioner at a value of $480. They had from 11 to 17 years to run and the petitioner assumed the annual rental of $1,125. On April 22, 1913, Maguire leased to the petitioner 12,571.07 acres, which he owned in fee, for 21 years, at an annual rental of $2,000, and on July 11, 1913, Maguire transferred leases covering the remainder of the ranch land amounting to 3,022 acres with unexpired terms varying from 6 to 15 years in consideration of the petitioner assuming annual rentals amounting to $865.50. fío entries were *403 made on the books of the petitioner reflecting the last two transactions until in December, 1917, when the value of the leaseholds was increased in the books of the petitioner by $50,000 and additional capital stock issued increasing petitioner’s capital to $100,000.
The evidence as to the value of the leases in question consisted principally of the testimony of four expert witnesses from the Territory of Hawaii, who were well qualified to express opinions as to such value, being men of long experience in the cattle ranch business and well acquainted with the properties in question. These witnesses all expressed opinions as to the fair market value as at the time the leases were acquired by the petitioner, ranging from $50,000 to $60,000 for all of the leases so acquired. One of the witnesses, within a few months prior to the time the petitioner was organized, had offered Maguire $200,000 for his property and interest in the ranch as it existed at that time. This offer was rejected for the reason that Maguire wanted at least $225,000.
After consideration of all of the evidence of record, we are convinced that the fair market value on March 28, 1913, of the three leases totaling 23,674 acres assigned to the petitioner by Maguire at the time of the organization of the petitioner and the seven leases totaling 3,022 acres subsequently assigned to the petitioner by Maguire on or about July 11, 1913, was at least $15,000 and that the fair market value on April 22, 1913, of the lease executed by the petitioner as lessee and Maguire as lessor on that date representing ranch property totaling 12,571.07 acres, was at least $35,000. The unexhausted portion of such leases as of December 31, 1916, and December 31, 1918, should be included in the petitioner’s invested capital for the years 1917 and 1919, respectively.
With respect to the amount of the exhaustion of leaseholds to be allowed as a deduction from gross income for each of the years 1917 and 1919, we are of the opinion that a reasonable allowance will be had by allowing ⅛ of the amount of $35,000 and ⅝3 of the amount of $15,000, the latter fraction being determined from the unexpired term of the principal lease included among those valued at $15,000.
In the third issue the petitioner is contending that invested capital for the year 1917 should be increased by the amount of $522, representing the cost of an automobile charged to expense during December, 1916, and by the amounts of $62.75 and $1,263.62, as representing excessive depreciation written off on the books of the petitioner on or before December 31, 1916, on “ carts and wagons ” and “ fences and improvements,” respectively. It also contends that invested capital for 1919 should be increased on account of excessive depreciation previously written off on fences and improvements in the *404 amount of $707.23 and that the invested capital for 1919 should be reduced by the amount of $4.75 as representing insufficient depreciation previously written off on carts and wagons.
The purchase price of the automobile was erroneously charged to expense in 1916. This item was unquestionably a capital item and the respondent in determining the gain on the sale of the automobile in 1919 so considered it. It should be restored to surplus as of December 31, 1916, and included in invested capital for 1917.
As to the other items contended for in this assignment of error, the respondent has made his determination from the corporate records. If these records are in error, the burden of proof is upon the petitioner to show the proper adjustments. The record does not show that the books are incorrect nor that the straight line method of depreciation more properly reflects the true situation. Accordingly, the respondent’s determination as to these items should not be disturbed.
Regarding the fourth issue, the respondent’s determination is approved with respect to the adjustment he made in the 1917 invested capital on account of Federal income taxes for 1916 paid during 1917. All America Cables, Inc., 10 B. T. A. 213. In determining the invested capital for 1919, the respondent permitted a portion of the Federal income and profits taxes for 1918 which were paid during 1919 to remain in invested capital for 1919. This determination was correct in principle and in accordance with section 1207 of the Revenue Act of 1926, and our decision in Russel Wheel & Foundry Co., 3 B. T. A. 1168, but, as we found in our facts, he made a clerical error in his proration in that he only included in the invested capital for 1919, $826.34 of the 1918 taxes, whereas, he should have included the amount of $1,507.66. With respect to the reduction of invested capital for the year 1919, by the amount of $6,747.08, as representing additional taxes for 1916 and 1917, it is apparent from our decision so far in the case that the amount of the additional taxes for 1917 will be changed and when the correct amount is determined it should be substituted for the amount used by the respondent in his deficiency letter.
No proof was offered by the petitioner regarding the fifth issue. In its petition, however, it stated that this issue could be considered as abandoned if its claim for a paid-in surplus of $50,000, with respect to the leaseholds were allowed. Since we have found as a fact that the leases had the value claimed by the petitioner, it follows that the present issue regarding special assessment disappears.
The petitioner contends, with respect to the sixth issue, that it is entitled to deductions from its gross income for the year 1917, of the following amounts as representing exhaustion, wear and tear:
*405 Automobile_ $130. 50
Carts and wagons_ 43. 50
Fences and improvements_ 393.13
Leasehold amortization_ 2,403. 80
We have already disposed of the leasehold feature of this issue in our above discussion of the first two issues. The evidence supports the petitioner’s contentions with respect to the allowances for exhaustion of the automobile and carts and wagons in the amounts of $130.50 and $43.50, respectively, and we have so found in our facts. With respect to the item of fences and improvements, the evidence is not sufficient to show that the respondent erred and his determination on this item is approved.
The petitioner contends in the seventh issue that the respondent erroneously understated its earned surplus as of December 31, 1916, and its invested capital for the year 1917, by an amount of $10,725, and the respondent has affirmatively alleged that the income for 1917 should be increased by the amount of $10,725. We have found that in its closing, inventory for December 31, 1916, the petitioner valued 2,145 head of herd cattle at $20 per head, making a total of $42,900; that on its books this amount was increased in January, 1917, by $10,725, representing $5 per head on 2,145 cattle; and that in December, 1917, the valuation of herd cattle was again placed at $20 per head by reversing the entry made in January. No evidence was offered by either party as to the actual value of the herd cattle, which were at all times inventoried at the amount of the Territorial assessment. It is apparent, from the record, that the value of the cattle was increased on the books of the petitioner from $15 to $20 in the year 1916. We are convinced that the market value of the herd cattle, on December 31, 1916, was at least as great as the value that was used for Territorial property tax purposes and that the respondent was in error in reducing the earned surplus for 1916 and the invested capital for 1917 in the amount of $10,725. The respondent has failed to offer any proof that there was any change in the market value of herd cattle during the year 1917, and, accordingly, his allegation should be denied.
In connection with the eighth issue, the petitioner contends that its invested capital should be increased by $4,228.99 alleged to represent income that had accrued and was credited to the petitioner during 1916 on the books of the Hawaii Meat Co., Ltd., but which was not reflected on the books of the petitioner during the year 1916, and, therefore, not reflected in its surplus account on December 31, 1916.
The amount in question was due the petitioner for livestock furnished the Hawaii Meat Co., Ltd., during 1916. It represented a percentage of the year’s sales of the petitioner’s livestock, which the *406 Plawaii Meat Co., Ltd., a cooperative concern, had retained for the purpose of increasing its plant and equipment under an agreement to issue additional capital stock for the amount retained. The amount in question should have been included in the 1916 sales of livestock which would result in a corresponding increase in the petitioner’s invested capital for 1917. This treatment is in accord with the respondent’s handling of the stock dividend of $4,228.99, which was paid directly to Maguire on March 26, 1917, by the Hawaii Meat Co., Ltd., and which the respondent treated as a dividend of the petitioner.
With respect to the last issue, the petitioner alleges that the respondent erred in determining the deduction allowable under section 203(a) of the Act of October 3, 1917, in that he used 7 per cent of the petitioner’s invested capital for 1917 instead of 9 per cent as contended for by the petitioner. The petitioner has introduced no material evidence to show wherein the respondent was in error as to this issue and, consequently, his action in this respect should not be disturbed.
The deficiencies should be recomputed in accordance with the above-findings and opinion giving effect to the confession of error as to the ninth issue.

Judgment will be entered under Rule 50.