W. N. Foster v. Commissioner. Beulah Foster v. Commissioner.
Foster v. Commissioner
Docket Nos. 110779, 110780.
United States Tax Court
1943 Tax Ct. Memo LEXIS 166; 2 T.C.M. (CCH) 595; T.C.M. (RIA) 43373; August 4, 1943
*166 Wright Matthews, Esq., 3017 Gulf Bldg., Houston, Tex., for the petitioners. Frank B. Schlosser, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated cases involved deficiencies in income taxes for the year 1939 in the amount of $11,264.48 for each petitioner. The cases were submitted upon a written stipulation of facts, documentary proof and oral testimony. The issues are (1) whether petitioners were engaged in the real estate business during the taxable year so that profit realized on the sale of lots should be treated as ordinary income rather than as capital gain; (2) whether petitioners are taxable upon the sum of $50,000 less depreciation of $13,750 representing impounded oil income released in 1939, despite a purported assignment of that sum of 1938 to petitioners' daughter; (3) whether interest in the amount of $1,183.53, allocated to the sum of $50,000 and paid to said daughter in 1939, is includable in community gross income of petitioners for 1939; and 4 whether petitioners are entitled to additional depreciation of an automobile in the amount of $150.22. Other errors relative to depreciation were assigned in the respective *167 petitions, but no evidence was offered thereupon and they are considered as abandoned by petitioners. Findings of Fact The petitioners are individuals residing at Conroe, Texas. During the year 1939 they were married and living together as husband and wife. They filed separate returns for the period involved on a community property basis, with the collector of internal revenue for the first district of Texas at Austin, Texas. Prior to 1933, up to and including the taxable year 1939, petitioners, as a part of their community estate, owned a royalty interest and a one-third working interest in an oil and gas lease known as the Sun Oil Company-Foster lease. It covered certain lands situate in the John Bricker Survey, Montgomery County, Texas, which was being operated by the Sun Oil Company. On September 27, 1933, the State of Texas filed a suit attacking the title to the lands covered by this lease. The petitioners, the Sun Oil Company and others were named as defendants. At the time and subsequent to the institution of the suit, theSun Oil Company was producing oil and gas from the property. Pending the outcome of this suit, the Sun Oil Company impounded and held in a suspense account *168 the moneys due petitioners by virtue of their interest in the property. On January, 1, 1938 the impounded funds due the petitioners amounted to $120,716.66 together with interest thereon in the sum of $4,451.94. During the year 1939 this litigation was terminated in favor of the defendants. The petitioner, W. N. Foster, under date of January 1, 1938, executed and delivered the following instrument: THE STATE OF TEXAS COUNTY OF MONTGOMERY KNOW ALL MEN BY THESE PRESENTS: That I, W. N. Foster, of Montgomery County, Texas, for a valuable consideration to me moving, have transferred, assigned and set over, and by these presents do hereby transfer, assign and set over, unto my daughter, Martha Foster Madeley, also of Conroe, Montgomery County, Texas, Fifty Thousand ($50.000.00) Dollars out of the monies held by Sun Oil Company, being the funds impounded by said company out of monies resulting from the operation by it of the Sun Oil Company-foster lease covering lands in the John Bricker Survey in Montgomery County, Texas, said funds being so impounded to await the outcome of a litigation involving the title to said land in a suit by the State of Texas against the Sun Oil Company and *169 others. The funds referred to herein, and a portion of which are assigned hereby, are monies. the title to which is in dispute as between the State of Texas and the undersigned, W. N. Foster, and Sun Oil Company is hereby directed to pay over unto the said Martha Foster Madeley the said sum of Fifty Thousand ($50,000.00) Dollars out of said funds, if, and when, a final judgment in said suit shall establish the title of said Foster to said monies. WITNESS my hand at Conroe, Texas in duplicate originals this the first day of January, A.D. 1938. (Signed:) W. N. Foster WITNESSES: (Signed:) Mattie N. Jones W. M. Williams No consideration other than love and affection passed between the parties. On March 1, 1939, pursuant to the aforesaid instrument, the Sun Oil Company paid to petitioners' daughter, Martha Foster Madeley, from the impounded funds, the sum of $50,000 and the sum of $1,183.53, representing interest thereon. Petitioners filed community gift tax returns for 1938, each reporting as a gift onehalf of the sum of $50,000. Each placed a value of $5,000 thereon, and each claimed an exclusion of $5,000. No gift tax was paid. The respondent, in determining petitioners' *170 income tax liability for the year 1939, included in the community gross income as "oil royalties" the sum of $50,000 paid by the Sun Oil Company to Martha Foster Madeley, less 27 1/2 per cent depletion thereon of $13,750 or a net of $36,250, and also the interest payment thereon of $1,183.53. Martha Foster Madeley, in her income tax return for the year 1939, reported as her separate income the above-mentioned sum of $50,000, less $10,000, or a net of $40,000, together with the interest item of $1,183.53, and paid the tax thereon. Upon audit, the respondent eliminated these items of income and determined an overpayment of tax, but has made no refund as yet. During the taxable year the petitioner, W. N. Foster, was active in the practice of the law, in the oil business, and in the operation of a citrus grove of about 45 acres in the State of Florida. More than two years prior to the year 1935, petitioner, together with C.A. Toller and E. R. Campbell, acquired as a fee for legal services certain lands in the State of Texas. The lands consisted of two unadjacent tracts comprising a total of about 70 acres. In 1935 the co-owners of these premises transferred their legal title thereto *171 to E. R. Campbell as trustee for the purpose of having him dispose of the property for all of them. Thereupon the trustee entered into an agreement with the Perkins Development Company to develop and subdivide these properties into lots for sale. The co-owners of the equitable title approved these arrangements. Streets and sidewalks were constructed. The Perkins Development Company made numerous sales of the lots from time to time. After deducting their charges and commissions they accounted to E. R. Campbell as trustee for the collections from said sales. The trustee in turn allocated the receipts and paid them over to the co-owners in proportion to the respective interest. The petitioners were entitled to 50.47225 per cent of these receipts. In 1939 the Perkins Development Company paid the trustee the sum of $4,174.46, representing collections during the year 1939 from sales made prior to and during that year. Six lots were sold during 1939. No sales were made in 1940 or 1941. In 1942 a contract was cancelled and the lot resold, which liquidated the venture. The petitioner, W. N. Foster, took no active part in the development and sale. He ratified and confirmed all acts of the trustee *172 in the handling of this real estate. No distribution of the 1939 receipts by the trustee was made to W. N. Foster in that year. The respondent in his deficiency notices to the petitioners included in community ordinary income the sum of $2,109.94, being 50,47225 per cent of the sum of $4,174.46 received by the trustee. The petitioners on January 12, 1938 purchased a Graham-Paige automobile at a cost of $1,352, which was used for business purposes. On January 6, 1940 the car was traded in at a value of $300. Depreciation at the rate of 33 1/3 per cent was claimed by the petitioners on their 1938 income tax return and was allowed by respondent. The same claim was made on the 1939 return. Respondent allowed only the sum of $300.44 by deducting the allowed depreciation for 1938 and allowing 33 1/3 per cent of the balance. The useful life of this automobile was three years and the reasonable allowance for depreciation thereon for 1939 is 33 1/3 per cent of $1,352, or $450.66, as claimed by petitioners. Opinion The first issue, as accepted by both parties, turns upon the answer to the question whether petitioner, W. N. Foster, throughout the taxable year 1939, was engaged in the real *173 estate business as to the properties the gain on the sale of which is involved in this issue. Respondent has determined that he was and has taxed all his gain therefrom as ordinary income. Petitioner, W. N. Foster contends he was not so engaged, that the properties sold were therefore capital assets, and the gain therefrom taxable as capital gain under section 117(a)(1) of the Internal Revenue Code. Stress is placed by the petitioners upon the definition of the term "business" as defined by the Supreme Court in Flint v. Stone Tracy Co., 220 U.S. 107; Von Baumbach v. Sargent Land Co., 242 U.S. 503, as "that which occupies the time, attention and labor of men for the purposes of livelihood or profit." However, in any event, it is largely a matter of degree whether the activities of a taxpayer constitute a carrying on of a business within that term as defined. City Bank Farmers Trust Co. v. Commissioner, 112 Fed. (2d) 457. Each case must be determined in the light of its own circumstances and surroundings. One may engage in more than one business at the same time. Foster testified that he *174 was engaged in the practice of the law, in the oil business and in the operation of a citrus farm in Florida. We have to determine whether he was also engaged in the real estate business. Sometime prior to 1935, petitioner, W. N. Foster, together with C.A. Toller and E. R. Campbell, acquired as a fee for their legal services certain tracts of land in the State of Texas. The last consisted of two unadjacent tracts comprising about 70 acres. Being unable to dispose of said lands advantageously, the three co-owners deeded the premises to E. R. Campbell as trustee in 1935. Thereupon the trustee entered into an argument with the Perkins Development Company to develop and subdivide said property into lots for sale. The agreement was not offered in evidence and we have only the testimony of Foster as to what was done pursuant thereto. Permanent improvements were made, such as constructing of streets and sidewalks. After the plots were laid out, the Perkins Development Company sold the lots from time to time, and after deducting its commission and charges accounted to E. R. Campbell, as trustee, for the collections from the sale. E. R. Campbell thereupon allocated the receipts and distributed *175 them to the co-owners in proportion to their respective interests therein. In the year 1939, only 6 lots were sold. No lots were sold in 1940 or 1941, but in 1942 one contract of sale was cancelled and the lot resold, completely liquidating the property. While Foster took no active part in the development and sale of the lots, he ratified and confirmed all the acts of the trustee. The petitioner stresses his passive interest, as justification for the conclusion that he was not engaged in the real estate business. But the trustee was only the agent of the co-owners in the disposition of their property. And, so far as the record discloses, the Perkins Development Company was acting merely in a similar capacity in the sale of the lots. Those circumstances do not help petitioners. Richards v. Commissioner, 81 Fed. (2d) 369; Welch v. Solomon, 99 Fed. (2d) 41; Neils Schultz, 44 B.T.A. 146. That the transactions consisted of the sale of but 6 lots in 1939 also is not determinative since they were sufficient in number to take them out of the category of isolated transactions. It practically liquidated *176 a business that had been carried on for several years. The quantum must be considered in the light of other circumstances. The petitioners cite Phipps v. Commissioner, 54 Fed. (2d) 469; Pope v. Commissioner, 77 Fed. (2d) 599; and United States v. Robinson, 129 Fed. (2d) 297, as supporting their position. We do not regard them as decisive on the facts here. We have already observed that these cases must stand on their own bottom. We think the following cases are more nearly analogous: Commissioner v. Boeing, 106 Fed. (2d) 305; cert. denied, 308 U.S. 619; Ehrman v. Commissioner, 120 Fed. (2d) 607; cert. denied, 314 U.S. 668; Welch v Solomon, supra;Richards v. Commissioner, supra.Cf. James Lewis Caldwell McFaddin, 2 T.C. 395,. The petitioners had the burden of showing the respondent's determination that they were engaged in the real estate business in 1939 was erroneous. We think the *177 petitioners have not sustained the burden. Upon this issue the petitioners must fail. Issues (2) and (3) are interrelated and will be discussed together. Issue (2) involves the question whether the petitioners are taxable on the sum of $50,000 less depreciation of $13,750, representing impounded income released in 1939, which they assigned to their daughter on January 1, 1938. Issue (3) involves the interest earned while the funds were impounded. The petitioners contend the respondent erred in including in their gross income any part of the $50,000 of the funds impounded by the Sun Oil Company pending the outcome of a litigation involving title to the oil leases from which the royalties accrued. The argument is made that on January 1, 1938 the petitioners had by valid equitable assignment vested the right to that sum in their daughter, Martha Foster Madeley; that petitioners did not assign income because the impounded fund was not collectible until the litigation was terminated. Petitioners say the decisions of the Supreme Court in Helvering v. Horst, 311 U.S. 112; Helvering v. Eubank, 311 U.S. 122; and Harrison v. Schaffner, 312 U.S. 579, *178 do not control because the petitioners assigned an interest in a chose in action, and such an assignment under the laws of Texas is valid and cognizable in equity. We assume, without deciding, that such an assignment as here made was valid as between the parties. But we do not agree that such a conclusion is decisive of the tax consequences. The funds in question were the avails of the oil leases. Their character is not changed by the fact they were impounded pending litigation. The title to the lands on which petitioners held a lease was in dispute. The incidents, such as oil royalties, would follow the title to the property when determined. Petitioners' rights were sustained by the court in 1939. On January 1, 1938, the impounded fund amounted to $120,716.66, together with credited interest of $4,451.94. Fifty thousand dollars of the impounded funds was assigned. But there was no assignment of any interest in the lease itself. Cf. Blair v. Commissioner, 300 U.S. 5. The petitioners owned the same income-producing property after the assignment as before. We think the impounded funds in controversy are taxable to petitioners. Helvering v. Horst, supra; *179 Helvering v. Eubank, supra;Harrison v. Schaffner, supra.And they were so taxable for 1939 - the year when released - as respondent determined. North American Oil Consolidated v. Burnet, 286 U.S. 417. The interest credited to the fund falls within the same category. We hold with the respondent on issues (2) and (3). The final issue involves the question whether petitioners are entitled to a larger depreciation on the 1938 model Graham-Paige automobile than allowed by respondent. Under the evidence we are convinced that they are and have so found. Respondent is reversed on this issue. Decisions will be entered under Rule 50.