**HERTZ CORPORATION, a Corporation (Successor by Merger to J. Frank Connor, Inc., a Corporation),**

v.

**UNITED STATES of America, Appellant.**

**No. 12799.**

United States Court of Appeals Third Circuit.

Argued May 25, 1959.

Decided July 6, 1959.

Myron C. Baum, Washington, D. C. (Leonard G. Hagner, U. S. Atty., Wilmington, Del., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Department of Justice, Washington, D. C., on the brief), for appellant.

Roswell Magill, New York City (Harry N. Wyatt, Edgar Bernhard, Donald J. Yellon, Chicago, Ill., John C. Klett, Jr., Cravath, Swaine & Moore, New York City, D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Essentially this appeal presents two questions for review, namely: (1) whether "useful life" for depreciation purposes as used in Section 167(c) of the Internal Revenue Code of 1954, 26 U.S.C. § 167 (c) means the physical life of an asset for business purposes (the economic life), or the period during which the property is useful to the taxpayer; and (2) whether in the declining balance method of depreciation,[1] authorized by Section 167(b) (2) of the 1954 Code, salvage value is inherent in the method or, rather, is a figure below which depreciation is not permitted.

This is an action for refund of income taxes paid by appellee[2] for the fiscal years ended March 31, 1954, 1955, and 1956, in the amounts of $100.15, $4,044.-54, and $10,416.43, respectively. The government has appealed from an adverse judgment rendered by the District Court for the District of Delaware.[3]

Appellee's predecessor, Connor, was organized as a New Jersey corporation on April 2, 1947, and was merged with it on July 5, 1956. During the years pertinent to the inquiry, Connor was engaged in the business of renting and leasing automobiles and trucks, without drivers, in the State of New Jersey.[4]

---

1. Under the declining balance method of depreciation, a uniform rate is applied each year to the unrecovered cost or other basis of the property; however, such rate may not exceed twice the appropriate straight line rate computed without adjustment for salvage, nor may it be applied to property with a useful life of less than three years. Under the straight line method of depreciation, the cost or other basis of the property less its estimated salvage value is deductible in equal amounts over the period of the estimated useful life of the property. Income Tax Regulations (1954 Code) § 1.167(b)–1 & 2.

2. The Hertz Corporation is the successor by merger to J. Frank Connor, Inc., the original taxpayer herein. The claims for refund were filed by Hertz after such merger.

3. The opinion of the district court is reported at D.C.Del.1958, 165 F.Supp. 261.

4. "Renting" is the term used in the industry to describe the hiring of vehicles by salesmen, executives, engineers and tourists at stipulated rates per mile, per hour

The taxpayer had in operation during this period a preventive maintenance program which called for periodic inspections and servicing. However, the operative condition of the vehicles was a relatively minor factor influencing replacement of the fleet. More important in this regard was the percentage of its fleet being operated regularly; the activities of its competitors; mechanical changes; climatic conditions; strikes and work stoppages; the ability to obtain new cars; whether the country was at war or peace; economic conditions in its business area; and its financial situation. None of these factors were predictable in advance.

Under the influence of these factors the holding period of appellee's cars and trucks varied considerably. The average holding period for automobiles during the 1954–1956 period was 26.17 months, and during its entire nine-year existence, 29.36 months. The corresponding average holding periods for trucks were 38.89 months and 48.26 months.

The president of the Hertz Corporation testified concerning the car rental industry, its relative youth, highly competitive nature, and the factors that influence replacement of the vehicles. Hertz owns and operates a car rental business in approximately 170 cities and licenses operations in 650 additional cities.

Appellee also presented evidence by three certified public accountants to the effect that the term "useful life" has consistently meant and still means the economic life of the asset and not the life of the asset in the hands of the taxpayer. They further indicated that their experience with representatives of the Internal Revenue Service had been that depreciation was computed on the basis of the aggregate business life of the asset regardless of changes of ownership.

Initially, in preparing its returns for the years ended March 31, 1954, March 31, 1955, and March 31, 1956, appellee claimed depreciation on its automobiles on the basis of a four-year useful life at a 30% rate for the first two years and a 20% rate for the remaining two years. Its heavy duty trucks were depreciated on the basis of a five-year useful life, and its other trucks on the basis of a four-year useful life, both at uniform rates. The taxes so computed were paid. Subsequently, on September 14, 1956, appellee filed claims for refunds for the years 1954 and 1955, and on September 17, 1956, filed a claim for 1956. These claims for refund were based on an election in accordance with Section 1.167(c)–1(c) of the Treasury Regulations issued under the Internal Revenue Code of 1954 to utilize the declining balance method of depreciation. Inasmuch as the Commissioner failed to take any action upon the claims within a period of six months, this suit for refund was instituted.

The district court found that by 1954 the term "useful life" had come to mean the entire physical life (economic life) of the asset in question; that in enacting the Internal Revenue Code of 1954 Congress intended to change its meaning to useful life of the asset to the taxpayer; that Section 1.167(a)–1(b) of the Treasury Regulations so defining useful life was valid; that inasmuch as the Commissioner had acquiesced in the economic life construction of the term useful life, the appellee was entitled to rely thereon and the regulations could not be applied retroactively; and finally that salvage value is inherent in the declining balance method of depreciation and therefore there is no authority for application of a limit (representing reasonable salvage value) below which assets may not be depreciated. Accordingly, the district court entered judgment for Hertz for the total sum of $14,367.32.

■ The initial question posed for our consideration relates to the meaning to be ascribed to the term useful life

---

or day. "Leasing" is the term used to describe the contract hiring of vehicles for a fixed period on a relatively long-term basis (i. e., by the year or for a longer period).

which first appeared in the tax statutes in Section 167(c) of the 1954 Code, limiting the use of the declining balance method of depreciation to property with a useful life in excess of three years. The term was not defined therein. At a much earlier date, however, the term became embedded in the tax regulations relative to depreciation. Accordingly, it is essential for us to consider the history of the various depreciation provisions and the regulations implementing them.

The basic depreciation provision contained in the Revenue Act of 1913, 38 Stat. 114, 167,[5] has remained substantially unchanged throughout all later enactments. Later enactments added provisions regarding obsolescence and incorporated "property held for the production of income" within the purview of depreciable property. However, the theory of depreciation is the same today as it was in 1927 when the Supreme Court considered the problem in United States v. Ludey, 274 U.S. 295, 300–301, 47 S.Ct. 608, 610, 71 L.Ed. 1054:

> " * * * The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost."

The regulations issued by the Commissioner throughout the history of the income tax have implemented this broad statutory scheme and therein first appeared the term useful life. Prior to issuance of the 1956 regulations, however, no definition of this term was incorporated therein.

Since it is hornbook law that in interpreting undefined statutory language the courts look to common usage and general acceptance, both parties to this action have diligently searched the history of the term. However, as is not uncommon, they came to different con-

clusions. The government contends that the term useful life means and has always meant the period during which the asset is of use to the taxpayer, while Hertz asserts that it has always meant the economic life of the asset. Thus, neither party supports the opinion of the district court that until 1954 and the enactment of the new Internal Revenue Code the term meant economic life of the asset but Congress changed its meaning in enacting the new code. On the contrary, the parties agree that the meaning of the term, whatever it may be, has remained unchanged throughout the period of its use; i. e., that the 1954 Code was not intended to nor did it change the meaning. Our consideration of the 1954 enactment convinces us that the parties are correct and that Congress in 1954 intended no change in the meaning of the term. The view we take of the case thus requires us to consider the contentions of the parties regarding the accepted meaning of useful life.

Thorough study of the references points up one undisputed fact; that is, few of the cases, treatises, or regulations have addressed themselves to this very problem. The language found therein is imprecise, unclear, and ambiguous as regards the term useful life. Until the enactment of the 1954 Code and the authorization of the declining balance method of depreciation for assets with a three-year useful life, the problems regarding depreciation involved the reasonableness of the period of useful life. Few, if any, gave a thorough consideration to whether useful life meant economic life or not; rather, most taxpayers were interested in short depreciation periods. Further, most depreciable assets were such as were held by the taxpayer until they were ready to be scrapped and disposed of as no longer useful for their intended purpose.

Hertz's argument in support of the proposition that useful life has always meant the economic life of an asset is

---

5. " * * * a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business * * *."

basically three-pronged: judicial interpretation, administrative practice, and expert opinion. As regards judicial interpretation—we have been cited to a number of Board of Tax Appeals and Tax Court decisions.[6] However, the issue was not squarely presented nor was any theory of useful life formulated therein; rather, the questions posed in the cases were treated as factual in nature. Thus they are of little, if any, use to us as precedents. It was also noted that Philber Equipment Corp. v. Commissioner of Internal Revenue, 3 Cir., 1956, 237 F.2d 129, utilized the term useful life in the sense contended for by Hertz. However, a close reading of that opinion indicates that its use of the term may well support either contention. Moreover, the use of the term was not essential to the holding nor was that issue litigated on appeal. Finally, we note two recent appellate opinions in which this very question was presented. In Evans v. Commissioner of Internal Revenue, 9 Cir., 1959, 264 F.2d 502, the Ninth Circuit found in favor of the contention that useful life has always meant economic life, while in United States v. Massey Motors, Inc., 5 Cir., 1959, 264 F.2d 552, the Fifth Circuit came to the conclusion that it has consistently meant the length of time the assets are expected to be usable to the taxpayer. See also Cohn v. United States, 6 Cir., 1958, 259 F.2d 371.

In regard to the administrative practice, it is only fair to note that some of the pronouncements are ambiguous. However, Hertz itself refers us to what we are convinced is a highly significant statement of Bureau position; i. e., Treasury Department Bulletin F. The following statement appears under the heading "Allowance for Depreciation and Obsolescence."

"* * * The proper allowance for exhaustion, wear and tear, including obsolescence, of property used in trade or business is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate) whereby the aggregate of the amounts so set aside, plus the salvage value, will, at the end of the useful life of the property *in the business*, equal the cost or other basis of the property." (Emphasis added.)

Although the Internal Revenue Service originally disclaimed any authoritative standing for the specific items treated in Bulletin F, when it was republished in January, 1942, the following was added:

"* * * It contains information and statistical data relating to the determination of deductions for depreciation and obsolescence, from which taxpayers and their counsel may obtain the *best available indication of Bureau practice* and the trend and tendency of official opinion in the administration of pertinent provisions of the Internal Revenue Code and corresponding or similar provisions of prior Revenue Acts." (Emphasis added.)

Finally, Hertz relies upon the expert opinion of three witnesses, partners in the accounting firms of Ernst & Ernst, Price Waterhouse & Co., and Arthur Andersen & Co., respectively. They were called "to give testimony with respect to their experience in the application of the depreciation provisions of prior revenue acts, and specifically, to give their opinion as to the meaning of the term 'useful life' as it is consistently used and understood for the purposes of depreciation." Whatever persuasiveness this

6. West Virginia and Pennsylvania Coal & Coke Co., 1 B.T.A. 790 (1925); J. R. James, 2 B.T.A. 1071 (1925); Merkle Broom Co., 3 B.T.A. 1084 (1926); Max Kurtz, 8 B.T.A. 679 (1927); Whitman-Douglas Co., 8 B.T.A. 694 (1927); Wallace G. Kay, 10 B.T.A. 534 (1928); San-ford Cotton Mills, 14 B.T.A. 1210 (1929); John A. Maguire Estate, Ltd., 17 B.T.A. 394 (1929); W. N. Foster, 2 T.C.M. 595 (1943); Nat Lewis, 13 T.C.M. 1167 (1954); and Pilot Freight Carriers, Inc., 15 T.C.M. 1027 (1956).

testimony might have is lessened when it is noted that Montgomery's Federal Taxes, 37th ed., 1958, ch. 6, p. 4 et seq., edited by four partners in the accounting firm of Lybrand, Ross Bros. & Montgomery, is directly to the contrary.

Among the other evidence relied upon by Hertz is the fact that in 1942 the depreciation regulations were significantly changed. Prior to December 8, 1942, Section 19.23(*l*)–1 provided an allowance for depreciation which "plus the salvage value, will, at the end of the *useful life of the property in the business,* equal the cost or other basis of the property * * *." (Emphasis added.) The 1942 regulation eliminated the words "property in the business" and substituted the words "depreciable property." Although this change might appear to support Hertz's position on a cursory glance, a study of the legislative history of the amendment indicates that the change was effected as a result of the amendment of the act so as to include property held for the production of income within the class of depreciable property. No other significance for the change is warranted. See United States v. Massey Motors, Inc., 5 Cir., 1959, 264 F.2d 552.

We are of the opinion that the accepted meaning of the term useful life has always been the period of usefulness of the asset to the taxpayer in his business. Such a conclusion is in accord with the fundamental concept of depreciation as set forth in United States v. Ludey, 1927, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054, as further enunciated in Bulletin F, and as adhered to by the appellate courts. United States v. Massey Motors, Inc., supra; Cohn v. United States, 6 Cir., 1958, 259 F.2d 371. Nothing in the legislative history of the 1954 Code leads us to a contrary conclusion; rather, if anything, it supports the view here expressed and indicates, as the district court noted, that Congress was using the term useful life to mean the period during which an asset is useful to a taxpayer. Therefore, since the automobiles in question had a useful life of less than three years, Hertz is not entitled to depreciate them under the declining balance method of depreciation.

■ The question concerning the proper application of salvage value to the declining balance method of depreciation need not detain us for long. Congress unmistakably indicated in 1954 when it first authorized the new method of depreciation that "The changes made by your committee's bill merely affect the timing and not the ultimate amount of depreciation deductions with respect to a property." H. Com. Report on H. R. 8300, 83d Cong., 2d Sess., 3 U.S.Code Cong. & Adm. News, pp. 4017, 4049 (1954). Thus, what is changed is the acceleration of depreciation deductions in earlier years but not the total amount of such deductions. We can find no support for Hertz's contention that, since it is theoretically impossible to ever depreciate the entire value of the asset under this system, Congress intended that a taxpayer should be allowed to use the declining balance method to depreciate the asset below a reasonable salvage value. On the contrary, the statement quoted above appears to directly contradict such an assertion. The gist of Hertz's oral argument on this issue is that Congress intended to encourage replacement of equipment through a liberalized depreciation method more in accord with economic realities; that the treatment or lack of treatment of salvage value would also encourage that end by giving a tax benefit to the taxpayer; therefore, Congress must have intended that salvage value not be a limit upon depreciation under the declining balance method. The argument, if it has any validity, should be addressed to the Congress and not to the courts, especially in view of the clear and precise intention of Congress manifested in its committee reports.

The judgment will be reversed.