No. 17,639.

RUTH MAE FERGUSON, INDIVIDUALLY AND AS ADMINIS-
TRATRIX, ETC. *v.* BARNEY HURFORD, ET AL.
(290 P. [2d] 229)

Decided November 21, 1955.

508

Messrs. COIT & GRAHAM, for plaintiff in error.

Messrs. STRANG, LOESCH & KREIDLER, Mr. SAMUEL C. POLK, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

BARNEY HURFORD and Pearl Hurford, as the parents of Albert Hurford, deceased, join with Tilford Hurford, by his father and next friend, Barney Hurford, as plaintiffs in an action in the district court against Ruth Mae Ferguson, individually and as administratrix of the estate of Albert D. Ferguson, deceased, seeking damages claimed due them by reason of the death of their minor son, and damages for personal injuries to Tilford, both claims being based upon the death and injuries resulting from an automobile accident. The action was tried to a jury solely on plaintiffs' claims against Ruth Mae Ferguson, individually, resulting in a verdict in favor of Albert's parents in the sum of $6000.00 and a verdict in favor of Tilford, the minor, in the sum of $1000.00. The court denied defendant's motion for judgment notwithstanding the verdicts and for a new trial and entered judgments

on the verdicts. Defendant is here by writ of error seeking a reversal of the judgments.

At the pre-trial conference, held on November 24, 1954, the question of defendant's liability for the damages resulting from the accident was considered, at which time the court made and entered a pre-trial order, the part pertinent and material here is as follows:

"The next question concerns 'the family car doctrine.' As stated in the pre-trial conference defendant expects to show that her son, the driver of the car at the time of the collision, paid all moneys that were paid down at the time the car was purchased; that title was only taken in her name for convenience in obtaining insurance, etc., and that she was not in equity the owner of the car and had no right to control its use, the car actually belonging to the son.

"However, it is the court's understanding that the defendant mortgaged the car, signing the mortgage; that she obtained insurance on the basis she was the owner of the car; and that she signed all necessary documents to obtain registration of the car. The question is whether under these facts the family car doctrine can be applied to the present situation.

"The Court must, of course, accept the family car doctrine as announced by the Colorado Supreme Court. Our Supreme Court accepts the proposition that the doctrine depends upon control and use of the car. That is the party sought to be held liable through ownership had the right to control the use of the car and permitted one or more members of the family to use the same as a family car. It is true this doctrine is based upon the general theory of principal and agent.

"The Colorado Uniform Motor Vehicle Safety Responsibility Law is found in Chapter 16, C.SA. '35, starting with Section 39, and constitutes the law in connection with ownership, registration, and operation of automobiles for this State, and, of course, announced the public policy which the court must follow.

· "The law contains, in part, the following provisions:

" 'Section 39 (d), OWNER: A person who holds the legal title to a vehicle * * * shall be deemed the owner for the purpose of this article.' The remainder of this subdivision of our law concerning motor vehicles shows the purpose of declaring that a person who owns the legal title to a vehicle shall be deemed the owner. Registration can only be issued to the owner and in the event certain things occur, then the registration is to be cancelled and registration plates suspended, unless the owner makes a showing of beneficial responsibility, gives bond, or procures necessary insurance. There can be no question but that the legislature declared, under the public policy of this state and for the purpose of protecting third parties who might be injured by the motor vehicle, that the party in whose name the legal title stands should be deemed to be the owner and have the responsibility of such ownership.

"Following along the same line under our Colorado law, every owner is required to register his vehicle; the application shall state the name and address of the owner, and the owner is required to sign the registration card which should be in the possession of the operator and carried in the vehicle at all times; license plates are issued to the owner.

"Likewise under our Uniform Motor Vehicle Law, Sec. 76 of said Chapter 16, subdivision (q), an owner is defined as being 'a person who holds the legal title of a vehicle.'

"Under our several statutes certainly the defendant must be accepted as the owner of the automobile in question. To permit her to deny such ownership and to introduce evidence to prove her affidavit of ownership requiring registration certificate and identification plates, would be to set aside the Colorado law and not follow the policy as set by the Legislature.

"The next question is whether the defendant being, under the law, the owner of such motor vehicle, can

she establish as a fact that she did not control it? Certainly, being the owner she had the right of control and under our law it was her duty to exercise such right of control.

"Apparently it was for this very purpose that the Uniform Motor Vehicle Safety Responsibility Law was passed.

"Assuming that the defendant was the owner and with such ownership had the right of control, the court sees no reason why the family car doctrine would not apply in the present situation."

The trial was begun on December 7, 1954, and there the evidence disclosed that about midnight on the 28th day of April, 1954, Albert D. Ferguson, a minor, was the driver of an automobile on a return trip from Telluride to Nucla. In the automobile at the time were four companions, Albert Hurford, Tilford Hurford, Philo Richards, and Billy Ferguson. The trip from Nucla to Telluride had been a pleasure trip. Next to Albert D. Ferguson on the front seat of the automobile was Philo Richards, to whose right on the front seat was Albert Hurford. Billy Ferguson and Tilford Hurford occupied the back seat of the automobile.

According to the undisputed evidence, Tilford Hurford, Billy Ferguson, and Philo Richards all went to sleep immediately after leaving Telluride, and awakened at the time of the accident, as a result of which Albert Hurford and Albert D. Ferguson were killed. No one of the occupants of the car gave any testimony whatever as to its operation or speed during the return trip to Nucla, and all of the evidence clearly establishes that the four young men named were guests of Albert D. Ferguson.

Under the evidence the liability for any damages here must be based on our automobile guest statute (C.R.S. '53, 13-9-1).

Charles Childers, a State Patrolman, testified that he had seven and a half years of experience as such, and

during the entire period of his service was stationed at Montrose, Delta and Norwood. He had served in the Norwood district, where the accident occurred, for four years prior to the accident in question. During the patrolman's service he testified that he had investigated about 120 accidents each year, two-thirds of which were automobile accidents and occurred on mountain highways. He testified that ninety-five per cent of the one-car accidents involved excessive speed, and that as he traveled the highway where the accident occurred weekly he was familiar with it. The highway involved is numbered Colorado 145, and there have been approximately ten accidents a year on it.

With reference to the accident in question, he testified that it occurred at a point known as Keystone Hill, where the highway is winding, "blacktopped" and a good mountain road, with a grade of two or three per cent. Further, that by personal experiment fifty-five miles an hour was the maximum speed at which a car could be driven around the curve; that at that speed tire marks of both right and left wheels were plainly discernible, and that a safe speed was fifty miles per hour; also that there were no sign posts on the highway. He was notified of the accident about 3:30 A.M. on April 29, 1954, and went to the scene of the accident that morning about 10 A.M. for the purpose of making an investigation as to the cause thereof and obtaining such photographic evidence as was . there available. He testified that the weather was clear and the surface of the road dry, both at that time and on the night of the accident; that he had four photographs taken by a fellow patrolman, which photographs were admitted in evidence without objection. This witness further testified that the accident occurred on a curve on the highway and that by measurement the left wheel of the Automobile left a distinct mark for 240 feet before leaving the highway, plunged down an embankment for a distance of forty feet, and came to rest after continuing for ninety feet. He was then permitted

to testify, over objection, that from the marks on the highway and the position and condition of the car, it must have been traveling at seventy-five miles per hour.

Plaintiffs called defendant as a witness under the provisions of Rule 43 (b), R.C.P. Colo., and she testified that her son Albert drove the automobile involved in the accident *when he needed it,* and *that he had permission for this particular trip.* Further, that she was divorced, and that Albert boarded and lived in her house. On direct examination defendant testified that Albert had worked on the day of his death, and for a period of two years prior thereto, and that he used his wages to help support her and another minor son. Defendant had been ill and couldn't meet expenses, and this occasioned Albert quitting school and obtaining employment to help support them. "He paid all the grocery bills for himself, his brother and *I* in the two years he worked, besides help out with other expenses and making his payments on his car." At the conclusion of defendant's evidence, the following offer of proof was made, and by the court denied.

"Mr. Graham [attorney for defendant]: Defendant offers to prove that the 1953 Pontiac automobile involved in the accident concerned in the present case was purchased from Lee Ellis, used car dealer of Grand Junction, Colorado, by Albert Ferguson, using as a down payment therefor his own money and property without any addition to such money on the part of, or by, his mother, Ruth Ferguson. That in connection with such purchase it was necessary that a part of the purchase price be financed; that such financing was arranged through the Citizens Finance Company of Grand Junction, Colorado; that such financing was by means of a note and chattel mortgage securing the same; that the Citizens Finance Company was unwilling to accept a chattel mortgage executed by Albert Ferguson as owner of the automobile for the reason that Albert Ferguson was then a minor, and required as a condition to its willingness to finance

such purchase that the title to the automobile be taken in the name of Ruth Ferguson, his mother, and that his mother also signed the mortgage and note. The defendant further offers to prove that all installments on the note subsequent to its execution were paid out of moneys earned by Albert Ferguson until such time as he was killed, at which time the balance due was paid out of proceeds from collision insurance carried on said vehicle; that the cost of upkeep of said vehicle following its purchase was paid by Albert Ferguson; that all the repairs, expenses for tires, gas and similar expenditures were paid by Albert Ferguson; that Albert Ferguson used the automobile as his own, and that neither Albert Ferguson nor his mother at any time either suggested or required that Albert Ferguson receive permission from his mother, either express or implied, for the use of said automobile by Albert Ferguson; *that the use of said automobile made by Ruth Ferguson was casual, and in connection with the ordinary course of events, generally concerned with use relating to personal desires and requirements of Ruth Ferguson.*

\* \* \*

"Court: It is the understanding of the Court that it is admitted Mrs. Ferguson held the title to the car in her name; made application for registration; she procured insurance on the car in her name, which included liability insurance, which would apply under the law if the driver of the car was liable on account of negligence as in the present situation. Further that the evidence in the present case shows the car was used as a family car; and that the mother made no objection to any use the son desired to make of the car. Under these facts it is the Court's understanding of the law, that the party who holds legal title to the car, and registers it on account of such title, cannot now be heard to say she is not the legal owner of said car. The offer of proof is denied. This same question was raised in pre-trial conference and the Court at that time made a tentative

order the same as the present order; that is, the court announced its understanding of the law to be the same as herein stated." (Italics ours.)

Defendant then moved for a directed verdict, basing the same on insufficient evidence to warrant the submission of the case to the jury under the provisions of C.R.S. '53, 13-9-1. This motion was denied. Counsel for defendant urge a reversal of the judgment and present their argument under the following points:

1. In determining in its pre-trial conference order and at the trial that defendant was responsible, under the family car doctrine, for the negligence of her deceased son;

2. In permitting the State Patrolman to express an opinion as to the speed at which the car was going immediately prior to the accident as well as the speed at which an automobile could be safely operated around the curve in question;

3. Error in overruling defendant's motion for directed verdicts and for judgments notwithstanding the verdicts;

4. In refusing defendant's tendered instruction.

1. It would unduly prolong this opinion to restate the facts as found in the pre-trial conference order of the trial court and defendant's evidence, as well as her offer of proof. Other statutory provisions with which the *owner* of an automobile must comply are found in C.R.S. '53, 13. Pursuant to the statute defendant, in the registration of the automobile involved in this accident, represented herself to be the owner of the car. She signed a note and executed a chattel mortgage to secure the unpaid balance due on the purchase price thereof. She as owner of the automobile applied for and received an insurance policy on the automobile in her name, and when a loss occurred by reason of the accident here in question, the insurance was paid. She further testified that her son "had my permission to drive it [the automobile] any time" and in answer to the question, "And

he had permission for this particular trip, is that correct?" she answered "Yes."

Without the necessity of citation of any authorities, these admitted and undisputed facts conclusively establish that defendant was the owner of the automobile involved in the accident, and as such was equally liable with her son, the driver thereof, for any damages resulting to another by reason of his negligence while operating the automobile with her permission. It is not seriously contended here that the deceased and the injured son of the Hurfords were other than guests in the Ferguson automobile. In order to establish a liability under the guest statute, the burden was on the plaintiffs to convince the jury by a preponderance of the evidence that the conduct of Albert Ferguson resulting in the damage consisted of a "wilful and wanton disregard of the rights" of the passengers in the automobile.

 Counsel for defendant, in support of their contention that there is no evidence in the record to support the jury's verdict which necessarily includes a finding of a "wilful and wanton disregard of the rights of others" rely largely on this court's decision in *Pettingell v. Moede,* 129 Colo. 484, 271 P. (2d) 1038. They quote therefrom the discussion of wilfulness and wantonness found on page 491 of that decision. Wilfulness and wantonness being a mental attitude, indicated by action on the part of the driver of an automobile, it is, of course, impossible to prove that condition by direct evidence unless the driver himself admits it. However, wilfulness and wantonness may be proven by circumstantial evidence as was clearly indicated in the Pettingell-Moede case on page 495 thereof, wherein it is said:

"* * * Without doubt the thought that was intended to be conveyed in the former opinions to which reference has been made, relates to the principle that, where, from the surrounding facts and circumstances, the jury may rightfully determine that a reasonably prudent person should have known the probable result of his

reckless conduct, the jury may find by inference that the defendant did know, regardless of the fact that he himself maintains that he did not know. It is the same principle by which the jury is enabled in various instances to determine from all surrounding facts and circumstances the thought that was in the mind of a defendant at a particular time. *It is the method by which intent is determined.*" (Italics ours.)

We conclude that where the necessary intent is determined, either by direct or circumstantial evidence, the jury may rightfully find that wilfulness and wantonness exists. The opinion in *Pettingell v. Moede, supra,* announces a correct principle of law, and we adhere thereto.

2. In the instant case, unless the testimony of officer Childers and the exhibits are admissible, plaintiffs have failed to establish the necessary elements of wilfulness and wantonness on the part of defendant's deceased son. As stated heretofore, the evidence discloses that officer Childers had been a State Patrolman for seven and a half years, and during all of that time was stationed in Montrose, Delta or Norwood. We take judicial notice of the fact that the general territory in which officer Childers served is mountainous. He served at Norwood for a period of four years, and this occasioned his traveling the highway where the accident occurred on an average of one trip each week. It should also be borne in mind that he himself testified that on an occasion in pursuing a "speeder" he had rounded this identical curve at fifty-five miles an hour and observed that at that rate of speed tire marks were left on the highway by the wheels on the left, as well as the right, side of his automobile. He testified that, based upon his experience, fifty miles was a reasonably safe speed at which to round this particular curve. He testified further that he observed the tire marks made by the automobile in question here, and that for 240 feet on the "blacktopped" road, only the left wheels of the automobile left

any mark, and in this he is supported by photograhic exhibits introduced at the trial. When asked the significance of the one tire mark he stated that it was indicative of greatly excessive speed because the centrifugal force in rounding the curve at such speed took considerable pressure off the right wheels which pressure was added to the left wheels of the automobile, making this distinct mark. He further testified that when the automobile in question left the highway it was precipitated down a bank forty feet in height, faced with large boulders, to an old railroad bed, and thereafter traveled ninety feet before coming to rest. Defendant challenges this officer's qualifications to testify as to the speed at which the automobile was being driven and also his qualification to testify as to a reasonable speed. We find that the objection to this officer's testimony was correctly ruled upon by the trial court and the evidence was competent and revelant for the jury's consideration and in no wise invaded the province of a jury. *Linde v. Emmick,* 16 Cal. App. (2d) 676, 61 P. (2d) 338; *State v. Lingman,* 97 Utah 180, 91 P. (2d) 457; *Andrews v. Moery,* 205 Okla. 635, 240 P. (2d) 447; *State v. Bosch,* 125 Mont. 566, 242 P. (2d) 477; *Long v. State of Oklahoma,* (Okla.) 274 P. (2d) 553; *Luthe v. Schmidt-Gaerteuer Co.,* 170 Wis. 590, 176 N.W. 63; *Moeller vs. St. Paul City Railway Co.,* 218 Minn. 353, 16 N.W. (2d) 289; 70 A.L.R. 544; 23 A.L.R. (2d) 125 and 141; 32 C.J.S. pp. 237-8, sec. 533 (b); Blashfield Cyc. of Automobile Law and Practice, sec. 6283, p. 709.

3. We have determined that no prejudicial error appears in the record on the first and second points argued by defendant's attorneys, and, consequently, a discussion of the third point is deemed unnecessary.

4. Plaintiffs tendered the following instruction, which was refused, and in so doing they contend the court erred:

"You are instructed that if you believe from the evidence that the accident involved in this case was caused

by the deceased Albert Ferguson's dozing or going to sleep involuntarily just before the accident occurred, then you should find that the accident was not caused by negligence of Albert Ferguson consisting of a willful and wanton disregard of the rights of others."
The Court was correct in refusing this tendered instruction because there is not a scintilla of evidence in the entire record upon which to base it.

It will be remembered that on November 24, 1954, the trial court held its pre-trial conference, at which attorneys representing the parties litigant were present, and the record clearly indicates that immediately after the pre-trial conference the court made and entered a pre-trial order in effect determining that the only issue left for trial in the case was the liability of defendant under the guest statute (C.R.S. '53, 13-9-1). The record discloses that where was no objection interposed to the pre-trial order by defendant's counsel. If the pre-trial order was effective for any purpose whatever, it foreclosed defendant from raising questions of ownership and liability on her part. Rule 16, R.C.P. Colo. is the one under which the pre-trial conference was held, and it provides that the court may direct the attorneys to appear before it for a conference to consider certain matters, and having done so, then "The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, *and which limits the issues for trial to those not disposed of by admissions or agreement of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.*" (Italics ours.) At the pre-trial conference the court is authorized to make a determination not only of factual matters but of legal as well, if presented and argued, and in the absence of an objection to the pre-trial order or the part thereof with which counsel present do not agree, the order precludes any

further challenge of the questions determined at the conference. We must assume, in the absence of an objection, that the order on the pre-trial conference was made in cooperation with and by assent of the parties. In the absence of an objection, all matters determined at the pre-trial conference have the force and effect of a stipulation of the parties as to the correctness thereof. The pre-trial order controls the subsequent course in the action unless the court, at the trial, modifies the same to prevent manifest injustice. *Fernandez v. United Fruit Co.*, 200 F. (2d) 414; *United States v. Jones,* 176 F. (2d) 278; *Clark et ux. v. United States, et al.,* 13 F.R.D. 342; *American Machine & Metals, Inc. v. DeBothzat, etc.,* 82 Fed. Sup. 556; *Fowler, et al. v. Crown-Zellenbach Corporation,* 163 F. (2d) 773; *Shield v. Welch,* 4 N.J. 563, 73 A. (2d) 536; 4 Fed. Rules Decisions, 192, et seq.; 1 Barron & Holtzoff, Federal Practice & Procedure 964; 22 A.L.R. (2d) 600, et seq.

Finding no prejudicial error in the record, the judgments are, accordingly, affirmed.

Mr. JUSTICE HOLLAND dissents.