**Valdean LONGSDORF, Plaintiff,**

v.

**Curtis D. TUNSON, Lill Oll McGown, Robert S. McGown, Defendants.**

**The Travelers Indemnity Co., United States Fidelity & Guaranty Company, Garnishees.**

**Civ. A. No. 6391.**

United States District Court
D. Colorado,

Jan. 9, 1962.

Wormwood, O'Dell & Wolvington, Forrest C. O'Dell, Denver, Colo., for plaintiff.

Samuel D. Menin, Denver, Colo., for defendant Curtis D. Tunson.

Holley & Boatright, George Alan Holley, Wheat Ridge, Colo., for defendants Lill Oll McGown and Robert S. McGown.

Wood, Ris & Hames, William K. Ris, Denver, Colo., for Travelers Indemnity Co., garnishee.

Duane O. Littell, Denver, Colo., for United States Fidelity & Guaranty Co., garnishee.

DOYLE, District Judge.

Following the entry of a judgment against the named defendants in the sum of Fifty Thousand Dollars ($50,-000.00), a garnishee summons was issued to The Travelers Insurance Company and to United States Fidelity and Guaranty Company. Both of these companies denied being indebted to the defendants and thereupon the plaintiff filed a traverse of each of the garnishee answers alleging the truck responsible for plaintiff's injuries to be owned by Cornbelt

Products Company, or Cornbelt Products, Inc., and further alleging in each traverse that at the time of the accident a policy of public liability insurance issued by the respective insurance companies was in full force and effect and provided for coverage to the amount of Fifty Thousand Dollars ($50,000.00). There were further allegations that at the time and place of the accident the insured's truck was being driven with the express or implied permission and consent of the insured.

A hearing was held on January 2, 1962, on an agreed statement of facts.

The stipulation between plaintiff and United States Fidelity & Guaranty Company recited that: Exhibit 1 (marked plaintiff's G–1) is a true and correct copy of the policy in which Cornbelt Products, Inc. was the named insured which policy covered the named insured for bodily injury not to exceed the sum of Fifty Thousand Dollars sustained by one person in any one accident; that the policy was in effect on August 12, 1958, the date of the accident; that plaintiff's Exhibit 2 (marked plaintiff's G–2) is a truck-trailer lease signed by the defendant in the action as agent for the co-defendant Lill Oll McGown, which contract was signed on behalf of Cornbelt Products, Inc. by an agent of that company within the scope of his authority. Further stipulations provide that Exhibit 2 was a lease of the tractor and trailer involved in the accident (from the defendants as lessors, to Cornbelt Products, Inc. as lessee); that Robert S. McGown would testify that a few days prior to August 12, 1958 (the date of the accident) he had purchased a load of watermelons on his own behalf in Mineolla, Texas, and carried them by means of the tractor and trailer in question and sold them at the Denargo Wholesale Market in Denver, and that on August 12, 1958, he hired Curtis D. Tunson to take the unit to a city dump for the purpose of cleaning out the debris from the load of watermelons, and that while the unit was being driven by Curtis D. Tunson returning from the dump the collision giving rise to the present liability occurred.

The plaintiff's stipulation with The Travelers Indemnity Company is substantially similar in that it identifies the policy (Exhibit T–1), which policy of insurance was in force on August 12, 1958, and also identifies the truck-trailer lease between the McGowns and Cornbelt. It stipulates the testimony of Robert S. McGown in terms similar to those set forth above and adds that an official of Cornbelt Products, Inc. would testify that McGown hauled only one load on behalf of Cornbelt Products Co. under plaintiff's Exhibit 2 of the lease and that the load of melons was not hauled on behalf of Cornbelt Products, Inc. A further, separate stipulation is to the effect that Ralph Kapke and Don Kapke were associated with Cornbelt Products Co. and Ralph Kapke was an officer of Cornbelt Products, Inc., and that in March or April, 1958, they severed relations with Cornbelt Products, Inc. A further stipulation declares that Ralph Kapke would, if called, testify that on May 2, 1958, he informed the agent of The Travelers in Omaha, Nebraska, of the severance of relations between himself and Cornbelt Products, Inc. and requested that the Travelers policy in question (Exhibit T–1), be endorsed so as to eliminate Cornbelt Products, Inc. as a named insured. This endorsement, which was issued May 9, 1958, effective May 2, 1958, changed the name of insured by striking out Cornbelt Products, Inc. and the Kapkes by naming Cornbelt Products Co.

Travelers' theory would appear to be that Cornbelt Products Co. was at all times here in question a separate entity which had nothing to do with the execution of the truck leasing agreement, Exhibit 2.

Plaintiff's theory is that the vehicle which caused the injuries in suit was by virtue of the lease agreement, Exhibit 2, owned by Cornbelt Products, Inc. and that thus the injury is within the omnibus coverage of the policy.

Defendants maintain that the lease, Exhibit 2, was a formal device whereby Cornbelt could call upon this equipment if and when necessary, on the terms and conditions provided therein.

The lease itself gives to the lessee absolute control of the equipment "in the same manner as though the absolute owner thereof." It goes on to provide: "Lessee will employ and have absolute control and supervision of the operators of said equipment, provided, however, no persons shall be permitted to operate said equipment who is objectionable to the lessor."

Part III of the United States Fidelity and Guaranty Company policy provides that the insurance does not apply "(d) with respect to any hired automobile, to the owner, or a lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee;".

It is argued by U. S. F. & G. that McGown was the owner notwithstanding that he entered the lease, Exhibit 2, purporting to grant control to Cornbelt Products, Inc. This is predicated on the alleged restricted terms and conditions of the lease and also on the construction which the parties themselves gave to the lease. In practice, McGown is shown by the testimony to have used the vehicle for his own purposes most of the time and to have hauled for Cornbelt Products, Inc. on no more than two occasions during the period of the lease. Just prior to the accident giving rise to the present action, McGown had hauled a load of beans to San Antonio, Texas, and after checking with Cornbelt Products at Houston, as to whether they had anything, he purchased, on his own account, a load of watermelons he delivered to Denver and incident to this deal the truck, while being driven by a person employed by McGown, rear-ended the plaintiff's vehicle producing the injuries which gave rise to this judgment. It is said that in law and in fact McGown was the owner of the truck and that he did not relinquish either ownership, custody or control to Cornbelt Products, Inc. and because of this ownership the injury in question was excluded from the coverage of the policy.

The Travelers policy contains a clause substantially similar to that which is contained in the U. S. F. & G. policy. The clause, III(d) provides that the insurance does not apply "to any hired automobile, *to the owner*, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee;".

The narrow question here determinative is whether McGown continued to be the owner of the vehicle in question notwithstanding the provisions of Exhibit 2 purporting to transfer control of the vehicle to Cornbelt; or, stated differently, did the lease, Exhibit 2, effectively divest McGown of ownership within the meaning of the clauses which are noted above.

As a preface to discussion of the ultimate question, it is important to note that the courts have construed exceptions such as those which have been noted above so as to exclude from coverage the owner of a hired vehicle when that owner is operating it. The philosophy underlying these hired vehicle provisions is set forth in an annotation in 32 A.L.R. 2d 572, where the author explains:

"The kind of provision with which this annotation is concerned is a method of limiting the coverage of automobile liability policies, the theory of this particular limitation presumably being that the owner of a hired automobile would normally carry his own insurance on the automobile."

This is a note to a very recent decision, that of Chesher v. United States Casualty Co., 303 N.Y. 589, 105 N.E.2d 99, 32 A.L.R.2d 568. There, the Court said, 105 N.E.2d at page 100, 32 A.L.R.2d at page 571:

"The basic question before us is whether defendant may exclude and has legally excluded the lessor (McFerran) from coverage to defend and indemnify. In our view, the indorsement quite clearly excludes as

*an insured* the owner of a hired automobile and would be so understood by the average businessman. There is no ambiguity but merely an express variation of the provision contained in the body of the policy. We disagree with the courts below that the 'Hired Automobiles' indorsement was not meant to remove from coverage an owner 'who had transferred to another the ordinary attributes of ownership', 200 Misc. 92, 94, 105 N.Y.S.2d 558, 559, since then Central States as owner by way of such transfer would not be covered under this indorsement, though it is the named insured, has procured the policy for its benefit, and paid the premium. As the policy is written, it did not insure McFerran at the time of the accident."

Other cases which hold similarly are Gonzalez v. National Surety Corp. (5 Cir., 1959), 266 F.2d 667, and National Mutual Insurance Co. v. Liberty Mutual Ins. Co. (D.C.1952), 90 U.S.App.D.C. 362, 196 F.2d 597. In fact, no case has been called to the Court's attention which gives a restricted interpretation to the type of provision now under consideration.

Athough there is no Colorado authority construing such a stipulation, there are two decisions dealing with the issue of ownership and holding that legal title is the important factor. See Royal Indemnity Co. v. Markley, 116 Colo. 84, 178 P.2d 672, holding coverage notwithstanding a lease by the insured who was the owner of the vehicle there involved; see also Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229, recognizing the title holder of a vehicle as the owner and as the insured notwithstanding that the undisputed evidence established that the vehicle had been purchased on behalf of, and was wholly used by a minor son.

The remaining question is whether paragraph 7 of Exhibit 2 which authorizes the lessee to use the vehicle "in the same manner as though the absolute owner thereof" demands a different result. In the light of the Royal Indemnity

and Ferguson cases it would appear that the term "owner" must be construed to mean legal owner and thus the contention of plaintiffs that the lease effectively transferred ownership must be rejected. The evidence in the case, all of which indicates that the lease, Exhibit 2, was some kind of expedient and that in practice it was not observed supports this construction.

It is concluded that McGown was in fact and in law the owner of this vehicle and was excluded from coverage under both policies. It is, therefore,

ORDERED that the traverse be dismissed and that the denial of indebtedness asserted by Travelers and by United States Fidelity and Guaranty Company be upheld.