**CANAL INSURANCE COMPANY and Willie West**

v.

**LIBERTY MUTUAL INSURANCE and Union Camp Corporation.**

No. C74–22A.

United States District Court, N. D. Georgia, Atlanta Division.

June 19, 1975.

———◆———

T. Cullen Gilliland and J. Robert Persons, Atlanta, Ga. (Hurt, Richardson, Garner & Todd, Atlanta, Ga.), Fendig, Dickey, Fendig & Whelchel, Brunswick, Ga., for plaintiffs.

Kirk M. McAlpin, Atlanta, Ga. (King & Spalding, Atlanta, Ga.), L. R. Holliday, III, Savannah, Ga. (Bouhan, Williams & Levy, Savannah, Ga.), for defendants.

### ORDER

MOYE, District Judge.

Plaintiffs, Canal Insurance Company [Canal] and Willie West, seek a declaratory judgment and monetary recovery of $150,000 from defendant Liberty Mutual Insurance Company [Liberty Mutual] on the ground that Liberty Mutual, rather than Canal, provided primary liability coverage to the parties involved or connected with an automobile accident in Chatham County, Georgia.

The facts are largely undisputed. The case at bar derives from a collision which occurred on August 13, 1969, between a vehicle driven by D. C. Jordan and occupied by members of his family, and the truck owned by L. C. Townsend and driven by Townsend's employee, Willie West. At the time of the collision, West was returning to McIntosh County after delivering pulpwood to Union Camp Corporation in Savannah. The delivery was made in performance of a contract between L. C. Townsend and Union Camp for the harvesting, cutting and delivery of pulpwood. The members of the Jordan family suffered bodily injury as a result of this collision and instituted Civil Action No. 1835, in the Superior Court of McIntosh County, State of Georgia, against L. C. Townsend, Willie West and Union Camp corporation.

It has been stipulated at an evidentiary hearing that the only basis for any legal liability of any defendant in that suit would have been the alleged negligence of Willie West in the operation of the vehicle he was driving.

It has also been stipulated, at the aforesaid hearing, that, at the time of the collision, there was in effect a certain agreement between L. C. Townsend and Union Camp Corporation (Exhibit A to the Answer of defendant Union Camp Corporation) and that the vehicle driven by West at the time of the occurrence was owned by Townsend and was being used in performance of the Townsend-Union Camp Contract and that, at said time, West was on the business of the said contract and was not engaged in a frolic or detour.

At the time of the collision and at all other times material hereto, Canal had in force Policy No. 757268 with endorsement E–45 issued to L. C. Townsend purportedly covering the logging truck driven by Willie West. Liberty Mutual had in force Policy No. AEI–621–004540–219 with endorsement A6200 issued to Union Camp Corporation.

In the litigation formerly pending in McIntosh County, Canal denied coverage to Union Camp and refused to afford it a defense in connection with that litigation. Liberty Mutual also denied coverage under its policy to Willie West and L. C. Townsend, and refused to defend either of them. Canal undertook their defense purportedly under a reservation of rights.

In the McIntosh County action, defendant Union Camp's motion for summary judgment was granted by the trial judge on the grounds that L. C. Townsend was an independent contractor, employing Willie West, and that therefore Union Camp could not be held liable for any negligence of L. C. Townsend or Willie West.

On appeal, the Georgia Court of Appeals reversed. *Jordan v. Townsend*, 128 Ga.App. 583, 197 S.E.2d 482 (1973). The Court of Appeals held that in determining whether L. C. Townsend was an employee or independent contractor of Union Camp the chief test was whether, under the Memorandum of Agreement entered into between L. C. Townsend and Union Camp, Union Camp retained the right or authority to control the time, manner and method of executing the work, not whether Union Camp actually exercised that right or authority. The Court held that Union Camp did have this right under the Memorandum of Agreement and therefore Townsend was an "employee" of Union Camp and not an independent contractor. Since Union Camp could be held ultimately liable to the Jordan plaintiffs on this theory, the Court reversed the granting of summary judgment to Union Camp.

The instant lawsuit was originally filed by Canal as the sole plaintiff. At that time, the action for damages was still pending in the Superior Court of McIntosh County. Subsequently, the damage suit was dismissed with prejudice as a result of a settlement between Willie West and the plaintiffs therein. The total amount paid in settlement was $150,000 and was made by Willie West with funds purportedly advanced to him by Canal for that purpose. Willie West assigned and subrogated to Canal any rights he might have against any other insurer affording coverage to him for the collision in question and agreed to cooperate fully with Canal to enforce such rights.

On November 26, 1974, with leave of this Court, Willie West counterclaimed against Liberty Mutual for $150,000, plus costs and attorneys fees incurred in defending the underlying tort action, on the grounds that the policy of insurance issued to Union Camp by Liberty Mutual afforded him primary coverage and that, accordingly, Liberty Mutual should indemnify him in the amount of the settlement ($150,000) reached with the Jordans. Although Willie West filed the counterclaim, the real party in interest here is Canal, as it purports to have advanced the settlement funds and to be subrogated to the rights of Willie West.

Defendant Liberty Mutual makes the uncontroverted statement that the following facts have been established by the testimony of Mr. Haynes of Union Camp at the trial of the instant case and the depositions of L. C. Townsend and Willie West:

1. L. C. Townsend owned and held title to the truck in question.

2. Union Camp paid no license, use, rental or other fee for the use of the said truck.

3. Union Camp paid no taxes, operating allowance or other charges on the said truck.

4. There was no sign or other designation on said truck attributing ownership or use to Union Camp.

5. There was no other contract or agreement, either written or oral, relating in any way to the said truck, other than the harvesting contract mentioned above between L. C. Townsend and Union Camp.

6. Union Camp neither hired Willie West nor paid him any salary or

other remuneration, he being an employee of L. C. Townsend.

7. Union Camp exercised no control over Townsend's selection and use of his employees, drivers and equipment, and Townsend was not required to use the particular truck to perform the work.

8. The particular harvesting contract between Union Camp and Townsend could be performed in five to six months.

9. Under his harvesting contract with Union Camp, Townsend was paid weekly on the basis of the weight of the timber he delivered to Union Camp.

10. The truck owned by Townsend was less than one year old at the time of the collision.

11. L. C. Townsend was free to substitute at any time any truck he wished for the one involved in the accident.

The issue in this case is: Who is liable for the primary insurance coverage of Willie West—Canal Insurance or Liberty Mutual? To reach a determination of this issue, judicial construction of the two insurance policies and the two respective endorsements to these policies is required.

## A. THE LIBERTY MUTUAL POLICY No. AEI–621–004540–219 AND ENDORSEMENT A6200

### 1. *Plaintiff's Position—The Liberty Policy*

The plaintiff, Canal Insurance, argues that Willie West, the driver of the truck, was afforded prime coverage under the Liberty Mutual Policy because West was a user of a "hired" automobile (the truck) with the permission of Union Camp—a situation covered by the Liberty Mutual policy.

The Liberty Mutual policy defines "hired auto" as "an automobile not owned by the named insured (Union Camp) which is used under contract on behalf of, or loaned to, the named insured . . . ." Since the truck was used pursuant to the Townsend-Union Camp contract, the plaintiff argues that the vehicle was used "under contract in behalf of" Union Camp within the provisions of the policy.

The plaintiff states that Willie West is a "person insured" under the Liberty Mutual policy because the Liberty Mutual policy defines "persons insured" as:

"Any other person (here, arguably West) while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation . . . thereof is within the scope of such permission."

The plaintiff claims that since Willie West is a "person" using an automobile (the truck) "hired" by Union Camp, under a "contract in behalf of" Union Camp, and with the "permission" of Union Camp, Willie West is covered by the insurance policy issued by Liberty Mutual to Union Camp.

Plaintiff cites the case of *Bituminous Casualty Corp. v. Travelers Insurance Co.*, 122 F.Supp. 197 (D.Minn.1954), for the proposition that under an identical provision of an insurance policy similar to the Liberty Mutual policy, a judicial definition of the meaning of "hired automobile" is persuasive authority for the conclusion that the Townsend truck *was* a "hired automobile" under the Liberty policy.

The Court in the *Bituminous* case in construing the term "hired automobile" stated as follows:

"The term 'hired automobile', generally speaking, refers to a vehicle used under a contract of rental. But it is evident that the provisions in this policy contemplated a broader and more comprehensive coverage than that. Otherwise, the term 'hired automobile', without any other definition or amplification, would have been utilized. Therefore, not only a loaned automobile but any automobile used under contract in behalf of the Quarry Company would be considered as a

hired automobile within the definition which the policy contains. A strict construction, therefor, of the term 'used under contract in behalf of . . the named insured' is not suggested. That the Quarry Company was using the Williams automobile is implicit from Bituminous' position in this proceeding in its claim against Travelers. That the automobile was being used under contract in behalf of the Quarry Company likewise is implicit from the arrangement which was made between the Quarry Company and Williams. The Court is constrained to find, therefore, that the language used in this definition of a hired automobile is broad and comprehensive, and the interpretation accorded thereto should be free from any narrow or strict construction. The Williams truck was a hired automobile and not a non-owned automobile, as these terms are defined in the Bituminous policy." 122 F.Supp. 202–03

Since the Townsend truck was used under contract in behalf of Union Camp, Canal argues that under the broad judicial construction of "hired automobile" in the *Bituminous* case, *supra*, the Townsend truck is a "hired automobile" covered by the Liberty Mutual policy.

The Liberty Mutual policy states an exception to its "hired automobile" clause, which plaintiff notes, and which seems to bar coverage of Willie West. The "exception" language in paragraph (ii) excludes coverage to "the owner . . . of a hired automobile . . . or any agent or employee of any such owner . . ." Assuming the truck was a "hired automobile" the argument against plaintiff's position would be that Willie West is not covered because he is the employee of the owner (L. C. Townsend) of the hired truck.

However, Canal points out that preceding the subparagraph (ii) limitation of "persons insured" in the Liberty policy is a list of individuals and entities who are insured under the policy in paragraph (c). Paragraph (c) defines an insured as:

"any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . ."

Furthermore, Canal states that Liberty Mutual Insurance Company has previously litigated the "inherent ambiguity" in paragraph (c) of the policy, which purports to afford coverage to a permissive user, as juxtaposed with the provisions excluding various persons and entities as insureds in subparagraph (ii) referred to above. In *Wellman v. Liberty Mutual Insurance Co.*, 496 F.2d 131 (8th Cir. 1974), the Eighth Circuit Court of Appeals determined that the owner-operator of a truck hired by the named insured and subject to the control, direction and authority of the named insured was a permissive user of the vehicle set forth in paragraph (c) of the policy and held as follows:

"we think that the reasoning of the foregoing cases would justify construing the 'Persons Insured' section of Part II of the policy to extend coverage to the vehicle owner-operator, Mitchell. . . . Mitchell was, as a matter of law, operating the vehicle within the scope of the insured's permission, and, under these circumstances, the 'Persons Insured' provisions would cover him. The exclusion in section (ii) of 'the owner . . . of a hired automobile' would not bar coverage to a owner-operator since he would be protected under subdivision (c) as a user whose 'actual operation . . . is within the scope of such permission."

496 F.2d at 136(2). The effect of that holding, according to plaintiff, is that once a determination has been made that an individual or entity is an omnibus insured under paragraph (c) of the "persons insured" portion of the policy the

exclusionary or limiting provision in subparagraph (ii) will not bar coverage. The *Wellman* decision construed policy provisions in a Liberty Mutual policy identical to those in the instant case.

Since *Jordan v. Townsend, supra,* held Townsend to be an "employee" of Union Camp, plaintiff submits that, for the purposes of this case, Willie West was an employee of Union Camp and subject to its control. Therefore, West was an insured under paragraph (c) of the policy, and under the reasoning set forth in *Wellman v. Liberty Mutual Insurance Co., supra,* the exclusion in subparagraph (ii) of the policy purporting to limit the definition of "insured" would not bar coverage to West as an operator covered under paragraph (c).

As an alternative argument, Canal claims that the exclusionary clause in subparagraph (ii) is "ambiguous," and since Georgia law construes ambiguities in an insurance contract against the insurer, the "exception" language must fail. *Dunn v. Travelers Indemnity Co.,* 217 Ga. 426, 122 S.E.2d 518 (1961); *Float-Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701 (5 Cir. 1961); *B. L. Ivey Construction Co. v. Pilot Fire* Ga.1968).

Plaintiff's "ambiguity" argument is based on the relationship between West, *& Casualty Co.,* 295 F.Supp. 840 (N.D. Townsend and Union Camp as found by the Georgia Court of Appeals in *Jordan v. Townsend,* 128 Ga.App. 583, 197 S.E. 2d 482 (1972), and the language of the A6200 endorsement to the Liberty Mutual policy. Since, under the Court of Appeals' analysis of the timber-harvesting contract, L. C. Townsend is an "employee" of Union Camp, the plaintiff argues that this analysis should be read into the Liberty Mutual policy so that West, through L. C. Townsend, is considered an employee of Union Camp. Under plaintiff's analysis, West would not be excluded by the "exception language" because he would not be an "employee" of "the owner (Townsend) . . of a hired automobile," but rather,

the employee of the insured, Union Camp. In any case, plaintiff claims, since there exists an ambiguity concerning to whom Willie West is an "employee" under the Liberty Mutual policy, this ambiguity should be construed against the insured, Union Camp, so that West is held to be an employee of Union Camp, not Townsend.

2. *Plaintiff's Position—The Liberty Endorsement*

In addition, plaintiff claims that the A6200 Endorsement to the Liberty Mutual policy, entitled "Application of Insurance to Owner of Hired Automobile" provides coverage to Willie West, or at best is ambiguous so it should be construed as applying coverage to Willie West.

The Liberty Mutual A6200 Endorsement provides coverage "with respect to the hired automobile [described in the endorsement] or designated in the policy as subject to" the endorsement. If the hired truck is designated or described in the policy or endorsement, plaintiff argues, it is covered by the language in Liberty Mutual's A6200 Endorsement, which supersedes any inconsistent provisions contained in the (earlier) policy. *B. L. Ivey Construction Co. v. Pilot Fire & Casualty Co.,* 295 F.Supp. 840, 848 (N.D.Ga.1968).

Which "hired automobiles" are covered by the Liberty Mutual endorsement? (1) Those "hired automobiles" described on the endorsement itself (there are none), and (2) those "hired automobiles" covered by "general designation" within the body of the policy.

The plaintiff claims that page two of the Liberty Mutual policy, in the "Additional Definitions," provides the only arguable "general designation" as to which "hired automobiles" are covered by the policy:

"When used in reference to this insurance including endorsements forming a part of the policy:

"'Hired automobile' means an automobile not owned by the named in-

sured which is used under contract in behalf of, or loaned to the named insured . . ."

Since the Townsend truck is a "hired automobile" within this definition, plaintiff argues, the Townsend truck was "designated by this section," and therefore was "generally designated" in the insurance policy for purposes of the A6200 Endorsement's applicability. In this way, plaintiff claims that the Townsend truck is insured by Liberty Mutual's policy to Union Camp, since it was a "hired automobile" [*i. e.*, one "not owned by the named insured . . . used under contract in behalf of . . . the named insured"] "designated" in the original policy, and therefore subject to the A6200 Endorsement. Alternatively, the plaintiff argues that the Liberty Mutual policy and endorsement are so ambiguous and fraught with conflicts and uncertainties, that they should be construed against Liberty Mutual, by affording coverage to Willie West.

### 3. *Defendant's Position—The Liberty Policy*

The defendant Liberty Mutual disputes Canal's construction of the Liberty Mutual policy and A6200 Endorsement, and claims that L. C. Townsend and Willie West, as the "owner" and "owner's agent," respectively, of a "hired automobile," are expressly excluded from coverage under the Liberty Mutual Policy.

The exclusionary language cited by the defendant is found at paragraph (ii), page 1, of the Liberty policy:

"None of the following is an insured:

. . . . . .

(ii)   the owner or lessee (of whom the named insured is a sublessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee."

Since Townsend owned the truck and Willie West was employed by Townsend, even if the truck was a "hired automobile" the defendant argues that West and Townsend are not "insureds" under the policy.

However, Liberty Mutual disputes the fact that the truck was a "hired automobile," under the language of the policy rendering Liberty liable to:

"Any other person (arguably West) while using . . . a hired automobile with the permission of the named insured, provided his actual operation . . . thereof is within the scope of such permission."

Liberty Mutual, like the plaintiff, cites the definition of "hired automobile" from the "Additional Definitions" section of the policy, page 2:

" 'Hired automobile' means an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured, provided such automobile is not owned by or registered in the name of '(a) a partner or executive officer of the named insured or (b) an employee or agent of named insured who is granted an operating allowance of any sort for the use of such automobile.' "

Liberty Mutual argues that, notwithstanding the finding by the Georgia Court of Appeals in *Jordan v. Townsend, supra*, that Townsend may be considered an employee of Union Camp for liability purposes, the Townsend truck is not a "hired automobile" because there was no separate hiring contract with regard to this truck between Townsend and Union Camp.

Liberty cites 12 Couch, Cyclopedia of Insurance Law, § 45:264 (2d ed. 1964), for the proposition that "[t]o constitute a hired automobile there must be a separate contract of hiring or renting the automobile or group of automobiles." Since no separate hiring contract for the truck exists, it cannot be a "hired automobile."

Liberty Mutual states that paragraph (ii) of the Liberty Mutual policy excluding coverage of owners of hired automobiles and their agents is not unusual or ambiguous. It is based on the theory that the owner of the hired vehicle normally carries his own insurance on the

vehicle. *Longsdorf v. Tunson*, 200 F. Supp. 828, 830–31 (D.Colo.1962); *Chesher v. United States Casualty Co.*, 303 N.Y. 589, 105 N.E.2d 99, 32 A.L.R. 2d 568 (1952), Annot.; 32 A.R.R.2d 572 (1953). See *Gonzalez v. National Sur. Corp.*, 266 F.2d 667 (5 Cir. 1959). Therefore, Willie West and Townsend are excluded as "insureds" under paragraph (ii) because Townsend is the owner, and West the owner's agent, of a "hired automobile."

Alternatively, Liberty Mutual argues that if the Court holds that West and Townsend are "insureds" because the truck was a "hired automobile," liberty Mutual is only liable for excess coverage after Canal Insurance. Unlike the Canal policy, the Liberty Mutual policy provides:

> "With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

Liberty Mutual argues that Canal's "pro rata" clause does not apply here because Liberty Mutual's possible liability for "excess insurance" is *not* "other insurance" within the meaning of the Canal policy's "pro rata" clause. *Float-Away Door Co. v. Continental Casualty Co.*, 372 F.2d 701, 709 (5 Cir. 1966); *cert. den.*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); *Greenbriar Shopping Center, Inc. v. Lorne Co.*, 310 F. Supp. 303, 307 (N.D.Ga.1969), *aff'd*, 424 F.2d 544 (5 Cir. 1970); see Appleman, *Insurance Law & Practice*, § 4914, at 400–02 (1962).

#### 4. *Defendant's Position—The Liberty Endorsement*

Liberty Mutual argues that the Liberty Mutual A6200 endorsement does not afford any coverage to Townsend and Willie West as the "owner" or "owner's agent" of a hired automobile.

The A6200 Endorsement states the following:

> "Application of Insurance to Owner of Hired Automobile

> "With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that:

>> (1) the insurance applies as primary insurance

>> (2) subject otherwise to the Persons Insured provisions, the insurance covers as an insured the owner, any lessee (of whom the named insured is a sublessee) and any agent or employee of such owner or lessee, but only while such automobile is used in the business of the named insured as stated in the declaration, or by or on behalf of the named insured for personal or pleasure purposes and

>> subparagraph (ii) of the Persons Insured Provision is amended accordingly.

> "Description of Automobile

> "Any vehicle leased on a long-term basis to the named insured."

Liberty Mutual perceives Canal's argument favoring applicability of the A6200 endorsement as twofold: (1) the Townsend truck was "leased on a long term basis" to Union Camp and was expressly "described" in the A6200 endorsement, so the endorsement is applicable; and (2) the Townsend truck was "designated" in the Liberty Mutual policy as subject to Liberty Mutual's A6200 endorsement.

Concerning Canal's "leasing" argument, Liberty Mutual argues that the Townsend truck was not leased on a long-term basis to Union Camp within the meaning of the endorsement. Liberty claims that there was no "lease" entered into between Townsend and Union Camp, although the truck may have been "used under a contract in behalf of" Union Camp.

The Georgia Court of Appeals has defined a lease as the following:

> "[w]hen used with reference to tangible personal property the word

'lease' means a contract by which one owning such property grants to another the right to possess, use and enjoy it for a specified period of time in exchange for the periodic payment of a stipulated price, referred to as rent." *Undercofler v. Whiteway Neon Ad, Inc.,* 114 Ga.App. 644, 645, 152 S.E.2d 616, 618 (1966).

Liberty Mutual claims that there was no lease agreement between Townsend and Union Camp. Under the Memorandum of Agreement, Townsend was to perform logging services "with his own employees, labor force, and *equipment . . .*" (emphasis added). Memorandum of Agreement, paragraph 2(a) at page 2. The truck remained in the possession of Townsend and Townsend could use it for any purpose or sell it at any time. Union Camp did not pay any "rent" for the truck and Union Camp contributed no type of operating allowance for the truck. Therefore, Liberty Mutual urges, the truck was never leased to Union Camp, but was only used incidentally in the performance of a written service contract.

As a second matter, Liberty Mutual claims that even if the truck was leased, it was not leased on a "long-term basis" as required by the A6200 endorsement.

Liberty shows that the Townsend-Union Camp contract called for harvesting of 2,000 cords of wood, which approximates a time for performance of five months.

A long-term automobile leasing has been defined as one covering at least one year.

"'Leasing' is the term used in the [automobile] industry to describe the contract hiring of vehicles for a fixed period on a relatively long-term basis (for example, by the year or longer period)." *Hertz Corp. v. U. S.,* 165 F.Supp. 261 (D.Del.1958), *rev'd* 268 F.2d 604 (3 Cir. 1959), *aff'd,* 364 U.S. 122, 80 S.Ct. 1420, 4 L.Ed.2d 1603, at 165 F.Supp. 262.

Liberty argues that this long-term feature has been recognized in the Liberty Mutual policy under "Additional Definitions," paragraph (a)(ii) at page 3, when applying "Automobile Physical Damage Insurance" to a leased automobile. That section states that a leased vehicle is not considered a "covered automobile" unless it was leased to Union Camp "for a term of not less than one year." Since the logging contract could be performed in five months, there is no way that Agreement can be construed as effectuating a "long term" lease of the Townsend truck.

Concerning Canal's second position that the Townsend truck was "designated" in the Liberty policy as subject to Liberty Mutual's A6200 endorsement, Liberty claims that this is just not the case.

The A6200 endorsement applies where there is a "hired automobile . . . designated in the policy as subject to this endorsement." Canal has argued that a "hired automobile" such as the Townsend truck is designated generally in the main body of the Liberty policy by virtue of the language in the "Additional Definitions" of the policy.

Liberty claims Canal's position in this regard is void of merit. The term "hired automobile" is defined in the "Additional Definitions" of the policy because certain terms in the policy were given strictly defined meanings, and these meanings apply when used in the policy and in the endorsements. In proof of this, Liberty urges the Court to look at the entire Liberty Mutual policy, including those parts which are not in issue. Ga.Code Ann. § 56–2419; *Southeastern Fidelity Insurance Co. v. Fluellen,* 128 Ga.App. 877, 198 S.E.2d 407 (1973). "In so doing," Liberty claims, "the Court will notice that every policy definition applies to 'endorsements forming a part of the policy.' The Court's attention is invited to 'ADDITIONAL DEFINITIONS' at page 3 of the policy, to 'ADDITIONAL DEFINITIONS' at page 4, and to 'DEFINITIONS' under 'GENERAL PROVISIONS' at page 4."

Liberty claims that the mere definition of "hired automobile" in the policy does not constitute a "designation" of all "hired automobiles" in the policy to which the A6200 endorsement applies. On the contrary: Endorsement A6200 is subject to the "hired automobile" definition in the policy as it is to the other definitions in the policy. There is, in fact, no designation of the Townsend truck or any other vehicle in the policy which would thereby be subject to the A6200 endorsement. Since there was no "long term lease" of the Townsend truck to Union Camp, Liberty concludes that the A6200 endorsement is inapplicable and Liberty is free from liability coverage pursuant to it.

## B. THE CANAL INSURANCE POLICY NO. 757268 AND ENDORSEMENT E–45

### 1. *Defendant's Position—The Canal Policy*

The defendant Liberty Mutual argues that the Canal policy to L. C. Townsend provides primary coverage to Willie West and Union Camp because both are "insured" under the Canal policy.

The Canal policy defines "insured" as "named insured" (*i. e.*, L. C. Townsend) and "any person while using the automobile and any person or organization legally responsible for the use thereof." Willie West is arguably covered since he was the "person . . . using the automobile" and Union Camp is covered by the Canal policy as an "organization legally responsible" for the use of the truck.

Liberty claims that Union Camp is deemed to be "legally responsible" for the acts of Townsend and his agents in their activities as harvesters of pulpwood on behalf of Union Camp, under the decision of the Georgia Court of Appeals in *Jordan v. Townsend, supra.* The *Jordan* case held Union Camp to be the employer of Townsend and therefore, claims Liberty, Union Camp could have been held responsible for the tortious conduct of Townsend under the doctrine of *respondeat superior.* Another Georgia Court of Appeals case construing similar insurance policy language is precedent for the proposition that Union Camp would be responsible, as West's employer, under the doctrine of *respondeat superior.* The case held:

"... the definition [of insured] includes both the person using and the 'person or organization legally responsible for' such use, and the latter phrase is sufficiently broad to include an employer who is responsible for the negligent use by the employee in a respondeat superior situation." *Zurich Insurance Co. v. New Amsterdam Casualty Co.,* 117 Ga.App. 426, 429, 160 S.E.2d 603, 606 (1960).

Liberty Mutual concludes that Union Camp, under the *respondeat superior* doctrine, is an "insured" covered by the Canal Insurance policy.

Furthermore, Willie West is an "insured" under Canal's policy since West is a "permissive user" of an automobile, in that he used the truck with the permission of the named insured, Townsend.

### 2. *Defendant's Position—The Canal Endorsement*

Liberty Mutual argues that the Canal Insurance policy Endorsement E–45 does not exclude coverage of West, Townsend or Union Camp because the truck was not leased, hired, bailed nor rented to Union Camp.

Under the E–45 Endorsement, primary coverage is not extended to the Townsend truck if it was leased or bailed or contracted for use by another. Liberty maintains that the E–45 Endorsement refers only to a contract or agreement which relates specifically to the "described automobile" in question, *i. e.,* where Union Camp contracts a standard type of lease or rental agreement for a particular logging truck which Union Camp would operate itself for the hauling and delivering of pulpwood, or for some other use.

Liberty shows that no such contract exists between Union Camp and Townsend. The contract in the instant case was a service contract, not a contract for lease or hire of a truck, whereby Townsend was to cut and harvest pulpwood on Union Camp's land and deliver it to Union Camp's plant in Savannah. Townsend had control over his employees and his equipment and was to perform the contract with his own employees and equipment. See Memorandum of Agreement, paragraph 2(a)(b). Union Camp paid no license, use, fee or tax on the truck. No sign or identification on the truck indicated that it was to be owned or used by Union Camp. There existed no other agreement between Townsend and Union Camp concerning the use of the truck.

In construing the terms "lease, contract of hire, bailment, rental agreement or any similar agreement" in the Canal E–45 Endorsement, Liberty urges the Court to look to the plain, popular meaning given these terms by the average policyholder and construe any ambiguities against the policy-writer, i. e., Canal Insurance. Ga.Code Ann. § 20–704(2), *B. L. Ivey Construction Co. v. Pilot Fire & Casualty Co.*, 295 F.Supp. 840 (N.D. Ga.1968); *Jackson v. National Life & Accident Insurance Co.*, 130 Ga.App. 208, 202 S.E.2d 711 (1973). The average policyholder, argues Liberty, would construe these terms as specifically designated that a particular insured vehicle was being leased, bailed, hired or rented to someone who would take custody and possession of the vehicle. Union Camp did no such thing with the Townsend truck.

The Georgia law with regard to leases, contracts of hire, bailments or rental agreements supports Liberty's view that there must be a specific rental contract designating the vehicle involved.

"Lease" has been defined by the Georgia Court of Appeals as the following:

"[w]hen used with reference to tangible personal property the word 'lease' means a contract by which one owning such property grants to another the right to possess, use and enjoy it for a specified period of time in exchange for the periodic payment of a stipulated price, referred to as rent." *Undercofler v. Whiteway Neon Ad, Inc.*, 114 Ga.App. 644, 152 S.E.2d 616 (1966).

"Contract of hiring" of personalty is defined by Georgia statute as "a bailment conveying to the bailee a mere right of use." Ga.Code Ann. § 85–802.

"Bailment" has been described by the Georgia courts such that "[i]n order to create a bailment, the bailee must have an independent and exclusive possession of the property." *Atlantic Coast Line R. Co. v. Baker*, 118 Ga. 809, 45 S.E. 673 (1903).

Regarding "rental agreements" Liberty states that insurance policies which exclude coverage when the insured vehicle is rented have generally been construed as providing coverage unless (as was *not* the case here) the named insured (Townsend) parts with the custody, possession and control of the vehicle. See *Roadbuilders' Hauling Co. v. Constitution Indemnity Co.*, 165 S.C. 363, 163 S.E. 837 (1932); 13 Couch, *Cyclopedia of Ins. Law*, § 45:999 (2d ed. 1965); cf., *Insurance Co. of North America v. Northwestern National Insurance Co.*, 371 F.Supp. 550 (E.D.Mich.1973), *aff'd*, 494 F.2d 1192 (6 Cir. 1974).

Liberty maintains that the truck was never in any way, nor under any construction leased, hired, bailed or rented to Union Camp by Townsend such that the truck is excluded from coverage under the Canal policy by operation of the E–45 Endorsement. Union Camp never possessed or had any right to possess Townsend's truck. Townsend referred to the truck as "my personal truck," kept the truck at his house and could have sold it or used it on his farm without the permission of Union Camp (Townsend deposition, pp. 3, 7). Liberty claims that the contract between Townsend and Union Camp was for labor and services in which the logging truck was

used incidentally. Since Townsend was a logger, and the Canal policy was issued to him, the E–45 Endorsement cannot be construed as excluding risks Townsend might be subjected to in his occupation (Canal policy, p. 1).

Therefore, Liberty maintains, the exclusions in the Canal policy E–45 Endorsement are inapplicable to Union Camp, and the Canal policy covers Townsend, Willie West and Union Camp.

### 3. *Plaintiff's Position—The Canal Policy and Endorsement*

Canal's position is that the Canal Insurance policy affords no liability insurance coverage, or at best only excess coverage, to Willie West for the claims arising from the accident, because of the operation of the E–45 Endorsement. The E–45 Endorsement, as noted above, excludes coverage for use of an "automobile pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement, either written or oral, expressed or implied. . . ." Canal argues that when the endorsement is applicable, it applies only the named insured (Townsend) and not to all those who might otherwise be "omnibus insured" by virtue of Insuring Agreement III of the policy. Therefore, Canal argues:

"[b]y excluding omnibus coverage when the insured vehicle is used pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement either written or oral, expressed or implied, the company has undertaken to limit its coverage at any time the insured vehicle is being used subject to the direction and control of anyone other than its named insured. It is not necessary in this case, for the endorsement to be applicable, that it be shown that the vehicle in question was 'leased' or 'bailed' in the legal signification of that term. It has been previously shown that the vehicle was being used under the Union Camp-Townsend contract, for the benefit of Union Camp, and it clearly appears that, under the

Liberty Mutual policy, the vehicle was thus a 'hired automobile.' At the very least, the vehicle was being used pursuant to a 'contract of hire,' so as to activate the E–45 endorsement.

"Given the ruling of the Georgia Court of Appeals in *Jordan v. Townsend*, 128 Ga.App. 583, [197 S.E.2d 482] (1972), it is clear that the vehicle was being used, at the time of the occurrence, under the control of an entity other than Canal's named insured. The intent of the Canal endorsement, by using every term reasonably calculated to describe that intent (any similar contract or agreement either written or oral, expressed or implied) is clearly to withhold omnibus liability insurance coverage when the otherwise insured vehicle is so used. There is, therefore, nothing to invoke the coverages afforded under Canal's policy on behalf of Willie West, and it is clear that West is not an insured under that policy."

Canal contends, *supra*, that the Townsend truck is a "hired automobile" under the Georgia Court of Appeals' decision in *Jordan v. Townsend, supra,* and the judicial construction of "hired automobile" provided by the *Bituminous* and *Wellman* cases, *supra*. Canal submits that there is no viable or legal distinction between "hired vehicle" and a vehicle used pursuant to a "contract of hire" within the meaning of the Canal E–45 Endorsement.

Canal cites *Wolverine Insurance Company v. State Farm Mutual Insurance Company*, 415 F.2d 1182 (6 Cir. 1969), for the proposition that a truck, used under similar circumstances as the Townsend truck in the instant case, was a "hired automobile" within the meaning of a policy of insurance similar to the Canal endorsement. In *Wolverine* one Beaudry made various truck hauls for Flint Road Builders charging $10 per hour for hauling heavy equipment. Beaudry himself paid the costs of fuel and of a truck operator incurred for each haul. He maintained at his own

expense the vehicles he owned and used, including all repairs and replacements. He would undertake to haul equipment upon receiving a call from an office girl at Flint Road Builders who told him when and where to pick up the equipment he was to haul and deliver. No written contract existed between Beaudry and Flint Road Builders. The Eighth Circuit Court of Appeals held that Beaudry's tractor and trailer was a "hired automobile" within the meaning of a policy of insurance issued by Wolverine Insurance Company to Flint Road Builders. The Court noted that "the right to control" is the critical distinction between a "hired automobile" and a "non-owned automobile" for insurance contract purposes. *Id.* at 1184. The plaintiff notes that the Georgia Court of Appeals under the facts of the instant case determined that Union Camp Corporation maintained "the right to control" with regard to the Townsend vehicle and its operator Willie West. Therefore, urges plaintiff, Wolverine Insurance Company is significant insofar as it held that notwithstanding the absence of any written agreement between the parties, the Beaudry vehicle was a "hired vehicle."

## C. CONCLUSIONS OF LAW

The Court concludes that the defendant, Liberty Mutual, is correct in its arguments with respect to both the Liberty Mutual policy and A6200 Endorsement and the Canal policy and E–45 Endorsement.

■ Despite the holding of the Georgia Court of Appeals in *Jordan v. Townsend, supra,* that Townsend was an "employee" of Union Camp, Townsend's truck was a "non-owned" automobile" (owned by Townsend). The Townsend truck was not a "hired automobile" under the terms of the Liberty policy because there was no separate hiring contract. The Memorandum of Agreement constituted a service contract with L. C. Townsend to provide his own truck. Consequently, as is normally the case absent other circumstances, vehicle-owner's insurance (*i. e.,* Canal) should bear the burden of any loss.

■ Concerning the A6200 Endorsement, it affords no coverage to Townsend and West as the "owner" and "owner's agent" of a "hired automobile," because no automobile was hired. There was no lease of any vehicle described in the A6200 Endorsement, nor a lease of a vehicle "designated" in the Liberty policy. There was no "lease" of the truck at all—only its use incidental to the performance of a written service contract.

■ The Court rejects plaintiff's contentions with regard to the Liberty Mutual policy that, under the *Bituminous Casualty Corp. case, supra,* the Court read in a "hiring" agreement between Townsend and Union Camp from the Memorandum of Agreement. The fact that Townsend and West may be an employee of Union Camp under *Jordan v. Townsend, supra,* is not conclusive, under the *Wellman* case, *supra,* that West is a "person insured" under the Liberty policy, as one using a vehicle within the scope of the insured's permission.

■ Under the Canal policy to Townsend, both Townsend and West are covered as a "person insured" and "permissive user" respectively. The Canal endorsement does not exclude West or Townsend because the Townsend truck was neither leased, hired, bailed nor rented to Union Camp. Rather, as stated before, the Court concludes that the contract between Townsend and Union Camp was for labor and services in which the Townsend truck was only used incidentally.

■ The Court rejects Canal's argument that the Court should read in a contract of lease or hire into the Memorandum of Agreement, under the *Wolverine* case, *supra,* or because Townsend was held to be an "employee" of Union Camp by *Jordan v. Townsend, supra.*

Therefore, the Court holds the plaintiff, Canal Insurance Company, to be liable for the $150,000 paid in settlement to the Jordan family. Judgment for defendant Liberty Mutual accordingly.